[No. 2885–2. Division Two. August 15, 1978.]

THE STATE OF WASHINGTON, *Appellant,* v. LARRY
RONALD ELLIS, ET AL, *Respondents.*

124

*James E. Carty, Prosecuting Attorney,* and *Steven B. Tubbs, Deputy,* for appellant.

*Steven W. Thayer,* for respondents.

SOULE, J.—The State appeals from an order granting defendants' motion to suppress evidence obtained during the execution of a search warrant. Testimony shows that deputy sheriffs unsuccessfully attempted to gain admission by a ruse. Upon its failure, they entered forcibly under circumstances which will be detailed hereafter. The trial court suppressed the evidence solely on the ground that the use of a false name (the ruse) voided their attempts to comply with RCW 10.31.040.[1]

We affirm the order of suppression but on grounds slightly different from that articulated by the trial court, noting that if the judgment of a trial court can be sustained on any grounds, whether those stated by the trial court or not, it is our duty to do so. *State v. Carroll,* 81 Wn.2d 95, 500 P.2d 115 (1972); *State v. Berkins,* 2 Wn. App. 910, 471 P.2d 131 (1970).

In concluding that the use of a ruse per se voided the officers' efforts to comply with RCW 10.31.040, the trial

[1]RCW 10.31.040 reads:

"Officer may break and enter. To make an arrest in criminal actions, the officer may break open any outer or inner door, or windows of a dwelling house or other building, or any other inclosure, if, after notice of his office and purpose, he be refused admittance."

court was in error. Previous decisions in this jurisdiction have held that there is no constitutional impediment to the use of subterfuge. *State v. Hartnell,* 15 Wn. App. 410, 550 P.2d 63 (1976); *State v. Huckaby,* 15 Wn. App. 280, 549 P.2d 35 (1976). *See State v. Jones,* 15 Wn. App. 165, 547 P.2d 906 (1976). Federal authorities are to the same effect. *Lewis v. United States,* 385 U.S. 206, 17 L. Ed. 2d 312, 87 S. Ct. 424 (1966), *rehearing denied,* 386 U.S. 939, 17 L. Ed. 2d 811, 87 S. Ct. 951 (1967). *Smith v. United States,* 357 F.2d 486 (5th Cir. 1966); *Leahy v. United States,* 272 F.2d 487 (9th Cir. 1959).

The foregoing authorities permit entry by ruse if no force is used. In other words, the ruse will be permitted but only if successful.

If the ruse employed is unsuccessful and the officers do not gain peaceable entry, then the "knock and wait" rule comes into play. *United States v. Covington,* 23 Crim. L. Rep. 2061 (D.C. Cir. March 23, 1978); *cf. State v. Jones, supra.*

■ Whether legal entry is gained by force under the "knock and wait" rule depends on all the circumstances including the existence of exigent conditions which excuse compliance with the statute. *State v. Young,* 76 Wn.2d 212, 455 P.2d 595 (1969); *State v. Jones, supra.* The burden is on the State to establish compliance with the rules or exigent circumstances negating the duty of compliance. *State v. Talley,* 14 Wn. App. 484, 543 P.2d 348 (1975).

The facts disclose that about 4 a.m., May 3, 1976, a party of deputy sheriffs went to the home occupied by defendants for the purpose of executing a search warrant. Some of the officers were in uniform but the record indicates that those in uniform were so stationed that they were not readily visible to one looking out onto the front porch. Two detectives in plain clothes, one of whom was bearded, went on to the unlighted front porch. What transpired thereafter is set forth in the unchallenged findings of fact:

3. That as they approached the door, Detective Davidson and Dush were wearing plain clothes and in their

hands were carrying flashlights, their badges and drawn pistols;

4. That Detective Dush knocked on the front door of the residence and after some period of time a voice from within the residence asked, "Who's there," or words to that effect; that Deputy Dush replied, "Louie", further, that the voice from inside the residence questioned, "Louie who?" or the words to that effect; and that Deputy Dush replied, "Louie Cunningham";

5. That the individual, Louie Cunningham, is an acquaintance of defendant, Ellis;

6. That following this exchange of words, the front door of the residence was opened by defendant, Ellis, approximately one to one and a half feet and defendant, Ellis, standing behind the door, exposed his head and face to the officers;

7. That after the door was thus opened, Detective Dush announced his true identity and his purpose by saying, "Deputy Sheriffs with a Search Warrant," or words to that effect;

8. That *simultaneously with* the announcement of the officers true identity and purpose, the door to the residence appeared to be swinging closed, whereupon Detective Davidson placed his hand upon said door, the door was forced by Detectives Davidson and Dush, and defendant, Ellis, escorted at arms length to the interior of the residence.

(Italics ours.)[2]

The record further discloses, without dispute, that Detective Dush, the principal actor, was holding his gun in his right hand and was holding both his badge and flashlight in his left hand while directing the beam of the light towards the opening in the door, although it is not suggested that he was directing it into the eyes of defendant Ellis.

█ The purpose of the "knock and announce" rule has been stated in *State v. Dugger,* 12 Wn. App. 74, 528 P.2d 274 (1974) at page 78:

---

[2]The proposed word "subsequent" was stricken, and "simultaneously with" was interlined by the trial judge.

(1) it reduces the potential for violence to both the police officers and the occupants of the house into which entry is sought; (2) it guards against the needless destruction of private property; and (3) it symbolizes the respect for individual privacy summarized in the adage that "a man's house is his castle." *See* Miller v. United States, 1958, 357 U.S. 301, 307, 313 n. 12, 78 S.Ct. 1190, 1194, 2 L.Ed.2d 1332; Note, Announcement in Police Entries, 80 Yale L. J. 139, 140–41 (1970).

Because the uniformed officers were not reasonably visible to one looking out the door, because the badge of the plain clothes detective was not plainly displayed and because the defendant was afforded no time to form a judgment concerning the accuracy of the claim to be law enforcement officers, defendant Ellis was faced with a situation resembling that in *State v. Bresolin,* 13 Wn. App. 386, 534 P.2d 1394 (1975), in which robbers entered a house falsely claiming to be federal agents.

The circumstances of this confrontation make it understandable that a person in the position of defendant Ellis, upon discovery of the deception, might instinctively close the door in an effort to protect himself. His action was at least ambiguous. Had the officers established their identity more clearly, we would be disposed to say that the entry was justified by the attempted closing of the door under the holding of *State v. Neff,* 10 Wn. App. 713, 519 P.2d 1328 (1974). There, the attempted closing of the door came only *after* the officer had identified himself and this created the exigent circumstance authorizing immediate forced entry. It is implicit in that opinion that the defendant perceived the representation of the officer as legitimate.

In the present case, the court specifically found that the entry was *simultaneous* with the identification. In our opinion, the action taken is equivalent to that in *State v. Lowrie,* 12 Wn. App. 155, 528 P.2d 1010 (1974), in which it was held that in the absence of exigent circumstances, it is not enough to announce *as* the forceful entry is made. Immediate forceful entry is particularly offensive, and indeed dangerous, when the only reasonably visible officers

are in plain clothes. A prominently posted uniformed officer is a great aid in establishing the legitimacy of the announced identification, particularly when it comes at late and unusual hours as in the case before us.

Our search of the record has revealed no exigent circumstances justifying the conduct here at issue. There was no running or scurrying about indicating the attempted destruction of evidence or effort to take defensive measures. A vague notion that perhaps defendant had recognized an officer, standing alone, is not enough.[3] *State v. Lowrie, supra.*

 Examination of the federal authorities leads to the same conclusion. The closing of a door upon officers not in uniform under ambiguous circumstances does not excuse compliance with the rule requiring announcement *before* forceful entry. *Miller v. United States,* 357 U.S. 301, 2 L. Ed. 2d 1332, 78 S. Ct. 1190 (1958). *Miller* holds that the lawfulness of an entry to arrest without a warrant and the lawfulness of an entry to execute a search warrant are to be tested by identical criteria and that the statute[4] requires that an officer state his authority and purpose at the threshold and be refused admittance before he may enter by breaking.

In *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963), the court held that where an attempted ruse failed and the suspect fled from the door, the officer was not entitled to follow into the private quarters and arrest when he had not adequately dispelled the misimpression created by his ruse.

---

[3]The oral opinion of the trial judge notes the lack of exigent circumstances although the findings of fact make no reference to it.

[4]18 U.S.C.A. § 3109 (1969) reads in part:
"Breaking doors or windows for entry or exit
"The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance . . ."

In *Gatewood v. United States*, 209 F.2d 789 (D.C. Cir. 1953), the court held an entry to be illegal when a ruse caused the occupant of an apartment to open the door a bit and then attempt to close it upon observing the officers whereupon the officers, without first announcing their true identity, forced their way in. The court citing a number of authorities, both state and federal, declared that an officer, although armed with a warrant, may not lawfully break and enter unless he first discloses his true purpose and is refused admission.

In light of the record before us, we hold that where a ruse is unsuccessfully employed in an attempt to gain entry, the "knock and wait" rule must then be observed, absent exigent circumstances. The officer must announce his true identity and purpose and be refused admission before he may enter by force. We further hold that a *simultaneous* announcement such as was made here does not fulfill the requirement. Finally, we hold that the effort to close the door under the ambiguous circumstances shown here did not create an exigent circumstance so as to excuse compliance with the "knock and wait" rule.

The order of the trial court suppressing the evidence is affirmed.

PEARSON, C.J., and PETRIE, J., concur.