[No. 9481-9-II.   Division Three.   July 27, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. DEBRA DARCEL SCHMIDT, *Defendant,* MYRON ANTHONY SCHMIDT, *Appellant.*

*Steven W. Thayer,* for appellant (appointed counsel for appeal).

*Arthur D. Curtis, Prosecuting Attorney,* and *Mark E. Beam, Deputy,* for respondent.

McInturff, C.J.*—Myron Schmidt was convicted at a bench trial, on stipulated facts, of possession with intent to manufacture a controlled substance, methamphetamine. His appeal challenges the Superior Court's denial of his motion to suppress based on the court's conclusions that search of a shed attached to a garage was covered by the showing of probable cause in the affidavit for the original search warrant and that the knock and announce rule had been complied with.

On September 20, 1985, Clark County Sheriff's deputies executed a warrant at 2816 N.E. 209th Street, Ridgefield, Washington (the Schmidt residence). A SWAT (Special Weapons and Tactics) unit assisted in serving the warrant. The search warrant authorized search of the Schmidt residence, garage, and shed for methamphetamine and the person of Myron Anthony Schmidt.

In the process of executing the search warrant, two detectives knocked on the door of the west side of the house, identified themselves as the sheriff's department with a search warrant and banged on the door. They again yelled about 5 seconds later but there was no response so they kicked the door in. There was no one in the house.

Other officers approached the shed and garage which was estimated to be within 35 to 50 feet of the house. Dogs had

---

*This case was heard by a panel of Division Three judges sitting in Division Two.

been barking as they approached the Schmidt property. They knocked twice on the door to the shed which was already open approximately 2 inches. They yelled "Sheriff's Office. Search warrant." As they approached the door, they could hear people inside and smell what they identified from experience and training as methamphetamine. It became very quiet after their knock; the officers waited just less than 3 seconds and pushed in the door. The shed was attached to the garage by a concealed door; two people were found in the shed, one in the garage. They discovered a methamphetamine lab inside the shed; a loaded Ruger .25 caliber rifle with dual banana clips was hanging on the inside of the door. The officer shut off the flame to the drug laboratory to prevent explosion. A second telephonic search warrant was obtained by phone on the advice of a deputy prosecuting attorney and the shed was again searched.

The first issue is whether the trial court erred in denying Mr. Schmidt's motion to suppress because the original search warrant was unlawfully executed at the lean-to shed attached to the garage.

The knock and announce rule has both statutory and constitutional dimensions. Const. art. 1, § 7 has been codified in RCW 10.31.040. *State v. Lehman*, 40 Wn. App. 400, 401, 698 P.2d 606 (1985). RCW 10.31.040 provides:

> To make an arrest in criminal actions, the officer may break open any outer or inner door, or windows of a dwelling house or other building, or any other inclosure, if, after notice of his office and purpose, he be refused admittance.

Under the United States Constitution the Fourth Amendment requires announcement of identity and purpose before a nonconsensual entry by the police. *State v. Coyle*, 95 Wn.2d 1, 6, 621 P.2d 1256 (1980).

The purpose of the knock and announce rule requiring an officer to knock, announce and await refusal before making a forcible entry into a residence is to prevent unnecessary violence to both police and occupants from an unannounced entry, physical destruction of property and

unreasonable intrusion into the occupant's right to privacy. *State v. Myers,* 102 Wn.2d 548, 554, 689 P.2d 38 (1984).

> The occupant's right of privacy is severely limited where the police have satisfied the Fourth Amendment's probable cause and warrant requirements. In such a case, the officers possess the authority to intrude upon the privacy of the home regardless of the occupant's wishes and irrespective of his activity at the time of the intrusion.

*Myers,* at 554–55. The key to whether the knock and announce rule applies is not whether entry was forcible, but whether entry was pursuant to valid permission. *Myers,* at 554.

The proper remedy for unexcused violation of the knock and announce rule is suppression of the evidence obtained by the violation. *State v. Coyle, supra* at 14.

In *State v. Coyle, supra* at 6, the court said that to comply with the statute the police must announce their identity, demand admittance, announce the purpose of their demand and be explicitly or implicitly denied admittance. Correspondingly, Mr. Schmidt contends there was no demand to be admitted by the officers at the shed, nor was admittance denied. The State counters the officer's announcement "'Sheriff's Office with a search warrant'" provided sufficient notice of his purpose and the officer need not specifically request entry.

In *State v. Hilliard,* 18 Wn. App. 614, 616, 570 P.2d 160 (1977), the issue was whether the officers' failure to demand admittance before entry required suppression of the evidence seized. The court, at page 616, held that where the actions of the officers effectuated the purpose of the knock and announce rule, a demand for admittance was not required to comply with RCW 10.31.040. In *Hilliard,* (1) there was an announcement of the presence of the officers to the occupants, (2) the occupants communicated with the uniformed officers through an open door, and (3) the officers advised the occupants that they were under arrest for a felony before entering.

*State v. Lehman, supra* at 404, held there was sufficient

compliance with RCW 10.31.040 where the police officers made no express demand to enter the house. *Lehman,* at 404–05, states:

A statement by police officers identifying themselves and advising that they possess a search warrant is implicitly a demand for admission into the house. To wait for a grant or denial of admission when the occupant has opened the door would serve no purpose. At that point, the police can legally enter the premises whether permission to enter is granted or denied. . . . [P]rotection of the right of privacy in the context of the knock and announce rule required no more than the reasonable warning given by the police when they identified themselves and announced their purpose.

Under *Hilliard* and *Lehman,* whether a demand for entry is required depends on whether the facts of the case show these deputies' actions effectuated the purposes of the knock and announce rule. Here, failure to demand admittance did not increase the likelihood of physical destruction of property as the door was not closed and would not be damaged. Nor did failure to demand admittance impact the reasonableness of the intrusion into defendant's right to privacy since it can fairly be implied from the announcement that the deputies intended to enter to search, and per *Lehman,* at 405, protection of the right of privacy requires no more than the reasonable warning included in the identification of the police and of their purpose. The crucial question is whether lack of a demand to enter was contrary to the purpose of preventing unnecessary violence. Since it can be implied from the announcement that the deputies intended to enter, entry would be no surprise to the occupants and would not increase the likelihood the occupants would resist the entrance out of fear of an unknown intruder.

Second, Mr. Schmidt contends the knock and announce rule was violated because there was no express denial of admittance and the deputies did not delay a sufficient time to allow invitation or rejection of the deputies' entry. Mr. Schmidt argues 3 seconds is not a reasonable opportunity

to respond.

■ Police officers must act reasonably in forcibly entering a dwelling to execute a warrant. *State v. Young*, 76 Wn.2d 212, 455 P.2d 595 (1969); *State v. Edwards*, 20 Wn. App. 648, 581 P.2d 154 (1978). The length of time that an officer must wait before using force depends on the circumstances of each case. *State v. Edwards, supra* at 651; *United States v. Allende*, 486 F.2d 1351 (9th Cir. 1973), *cert. denied sub nom. Montoya v. United States*, 416 U.S. 958, 40 L. Ed. 2d 308, 94 S. Ct. 1973 (1974).

Presence of suspicious noises coming from private premises, the possibility of destruction of evidence, and the fact occupants were in plain view are factors courts have looked at to determine whether there was sufficient time between announcement and entry to constitute compliance with the knock and announce rule. Annot., *What Constitutes Compliance With Knock–and–Announce Rule in Search of Private Premises—State Cases*, 70 A.L.R.3d 217, 247–52 (1976). Knowledge or belief that a suspect possessed a weapon has been held to excuse compliance with the knock and announce rule. Annot., *Sufficiency of Showing of Reasonable Belief of Danger to Officers or Others Excusing Compliance with "Knock and Announce" Requirement— State Criminal Cases*, 17 A.L.R.4th 301, 306 (1982).

In *State v. Edwards, supra* at 652, a violation of the knock and announce rule was found where police kicked in a door immediately after making the announcement. In *State v. Woodall*, 32 Wn. App. 407, 411, 647 P.2d 1051 (1982), *rev'd on other grounds*, 100 Wn.2d 74, 666 P.2d 364 (1983), a 3– to 4–second wait was sufficient when the officers saw an individual looking out a window at them and the officers feared the occupants were arming themselves. In *State v. Jones*, 15 Wn. App. 165, 167, 547 P.2d 906 (1976), a 10–second wait between the knock and announce and entry was found reasonable. *Jones*, at 167, considered the nighttime hour and the fact defendant and his family were in bed, among other factors, in concluding the delay was reasonable. In *State v. Berlin*, 46 Wn. App. 587, 594,

731 P.2d 548 (1987), the court stated that while

facts [possibility of violence or defendants being armed] may not suffice to fulfill the State's burden to show exigent circumstances necessary to waive compliance with the knock and announce rule. . . . They do however bear upon the reasonableness of the length of time the police waited after announcing themselves.

Mr. Schmidt cites cases from other jurisdictions where a few seconds between knock and announce and entry were found to violate the knock and announce rule. *State v. Bates,* 120 Ariz. 561, 587 P.2d 747, 749 (1978) (forcible entry to execute a search warrant after 3 to 5 seconds from announcement of purpose and authority was not "lengthy inaction" sufficient to constitute constructive refusal of admittance, therefore was unreasonable in the absence of information the occupants were armed or dangerous). *State v. DeFiore,* 64 Ohio App. 2d 115, 411 N.E.2d 837, 839–40 (1979) (10– to 30–second wait was not sufficient, gambling equipment is not easily disposed of, there was no reasonable belief occupants would be armed or dangerous, and no sound indicating occupancy or destruction of evidence could be heard by the officers before entry).

On the other hand, *Sandland v. State,* 636 P.2d 1196, 1199 (Alaska Ct. App. 1981) upheld police entry after a 10– to 20–second wait after the knock and announcement when the structure of the entryway afforded officers no protection from gunshot and police had information a man staying at the residence to be searched had displayed a loaded pistol on the same day as the entry. The court found exigent circumstances excused literal compliance with the knock and announce rule. *Sandland,* at 1198.

The trial court found there were no exigent circumstances to justify noncompliance with the knock and announce rule. This need not be decided if the court finds a delay of 3 seconds constituted a reasonable delay and therefore the knock and announce rule had been substantially complied with. However, general speculation that a defendant may be armed and police safety endangered is

not sufficient to constitute exigent circumstances excusing compliance with the knock and announce rule. *State v. Jeter,* 30 Wn. App. 360, 362, 634 P.2d 312 (1981). Exigent circumstances exist if there are specific facts learned prior to execution of the warrant or observed at the scene which give rise to a genuine concern for police safety. *State v. Jeter, supra* at 362. An informant's statement that the defendant kept a weapon was not sufficient. *Jeter,* at 362. However, in *Jeter,* there was no knock or announcement, so it could not be argued there was substantial compliance.

Here, barking dogs may have alerted the occupants in the shed of the officers' approach. The officers knocked and announced their purpose. They heard people inside the shed before they knocked and announced and the occupants of the shed became very quiet after the officers' knock. A SWAT team was used to serve the warrant, based on a determination that Mr. Schmidt had previously been arrested for carrying a concealed weapon, assault and resisting arrest. The volatility of a methamphetamine lab, which trained officers identified by its distinctive odor before entry of the shed, also bears on the reasonableness of a 3–second wait in these circumstances. Further, the size of the shed, relatively small, indicates a very short time would be required to answer the officers' knock. This is in contrast to a residence with multiple rooms where a longer response time would more adequately protect the privacy of the occupants.

Under these facts, we hold a delay of 3 seconds after knock and announce before entry was reasonable. Therefore, we need not decide if there were exigent circumstances excusing noncompliance with the knock and announce rule.

The second issue is whether search of the lean–to shed was within the scope of probable cause in the affidavit for the original search warrant. At oral argument, Mr. Schmidt withdrew his assignment of error underlying the second issue; therefore, we need not discuss it further.

647

The judgment of the Superior Court is affirmed.

Munson and Thompson, JJ., concur.

Review denied by Supreme Court November 4, 1987.